IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTH PACIFIC MANAGEMENT, INC., et al.,

                  Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin Company,

                  Defendant.

No. 3:21-cv-00404-HZ

OPINION & ORDER

Kyle A. Sturm
Nicholas A. Thede
Foreman Sturm & Thede LLP
P.O. Box 13098
Portland, OR 97213

Nicholas A. Kahl
Nick Kahl, LLC
209 SW Oak Street, Suite 400
Portland, OR 97204

    Attorneys for Plaintiffs

John A. Bennett
Stuart Duncan Jones
Bullivant Houser Bailey PC
One SW Columbia Street, Suite 800
Portland, OR 97204

James Kitces
Robins, Kaplan, Miller & Ciresi, LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

Taylore Karpa
Robins Kaplan LLP
800 Boylston Street, Suite 2500
Boston, MA 02199

   Attorneys for Defendant

HERNÁNDEZ, District Judge:

   Plaintiffs North Pacific Management, Inc., Airport Inn, LLC, BPS Associates, LLC, Bean & Company, LLC, COHO.Res, LLC, JBH Property Acquisitions, LLC, Suntek Park, LLC, TFBP Holdings, Inc., and Triple S Enterprises, Inc. bring this class action lawsuit against Defendant Liberty Mutual Fire Insurance Company seeking a declaratory judgment that their insurance policies, provided by Defendant, cover their business income losses stemming from the COVID-19 pandemic. Plaintiffs allege that Defendant breached its insurance contracts with Plaintiffs and similarly situated policyholders when Defendant denied coverage for Plaintiffs' pandemic-related business income losses. Plaintiffs seek a declaratory judgment that their insurance policies cover their alleged losses and seek damages for breach of contract. Defendant moves to dismiss Plaintiffs' Complaint for failure to state a claim.

   Many businesses suffered extreme hardship and financial loss as a result of the government shutdown orders that state and local governments nationwide issued to curb the spread of COVID-19 infections throughout the country. People across the world have lost their

lives and livelihood as a result of the pandemic. The Court sympathizes with the plight of businessowners who suffered significant and even catastrophic financial losses due to the government closure orders. Plaintiffs' business insurance policies, however, does not cover their loss of business income. The Court grants Defendant's motion to dismiss.

## BACKGROUND

Plaintiff North Pacific Management, Inc. (North Pacific) operates a property management company in Tigard, Oregon. Compl. ¶ 1, ECF 1. Plaintiff Airport Inn, LLC operates the Radisson Hotel Portland Airport and a restaurant called Lakeside Bar & Grill in Portland, Oregon. *Id.* Plaintiff BPS Associates owns and operates athletic clubs in Portland and Lake Oswego, Oregon. *Id.* Plaintiff Bean & Company owns and operates a restaurant in Aurora, Oregon, called Filberts Farmhouse Kitchen. *Id.* Plaintiff COHO.Res, LLC "owns and operates an electronic inventory distribution for independent hotels" and is located in Tigard, Oregon. *Id.* Plaintiff Heathman Garage Associates owns and operates a parking garage in Portland. *Id.* Plaintiff JBH Property Acquisitions owns and/or operates hotels in Portland and Beaverton, Oregon. *Id.* Plaintiff Suntek Park owns and operates office buildings and retail centers in Portland. *Id.* Plaintiffs TFBP Holdings and Triple S Enterprises own and operate restaurants in Portland, Oregon. *Id.* Plaintiff North Pacific obtained business insurance on behalf of all Plaintiffs from Defendant Liberty Mutual. *Id.* ¶ 6.

Due to the COVID-19 pandemic and business closure orders issued by the state of Oregon, Plaintiffs "were forced to suspend, in whole or in part, their business operations" leading to financial losses. *Id.* ¶ 11–12. Plaintiffs tendered an insurance claim seeking coverage for their financial losses stemming from its reduced business operations. *Id.* ¶ 17. Defendant denied Plaintiffs' claim. *Id.* ¶ 22. Plaintiff alleges that the "business income," "extended period

3 – OPINION & ORDER

of restoration," and "extra expense" coverages in its business insurance policy require Defendant to cover Plaintiffs' financial losses resulting from reducing their business operations. *Id.* ¶ 19–21.

The Policy covers "risks of direct physical loss or damage to covered property as a result of an occurrence, unless excluded." Schollard Decl. Ex. 1 (Policy) at 13[1], ECF 15-1. The Policy does not define the phrase "direct physical loss or damage." Section B of the Policy's Declarations (form RM1000) demonstrates that the Policy covers real property, personal property, and personal property of others. *Id.* The Policy also covers loss of business income, including "[t]he actual loss of business income you incur during a period of restoration directly resulting from damage by a peril insured against to the type of property covered by this policy at a covered location." *Id.* at 19.

Perils insured against are "causes of loss for which this policy provides coverage." *Id.* at 52. A covered loss under the Policy means "a loss to covered property at a covered location resulting from a peril insured against." *Id.* at 49. Covered property "means property insured by this policy." *Id.* "Personal property" includes "tangible things, other than real property, including improvements and betterments you have made in buildings you do not own." *Id.* at 53. Real property "means buildings and any other structure, including: (1) Completed additions, extensions, permanent fittings or fixtures; (2) Machinery and equipment used to service the buildings; and (3) Yard fixtures." *Id.* at 54.

The Policy also covers extra expenses, including necessary expenses the insured incurs in excess of its normal operating expenses that reduces its loss of business income. *Id.* at 19, 21.

---

[1] Citations to the Policy are to the ECF page numbers because Defendant did not page number the exhibit.

4 – OPINION & ORDER

The Policy provides an additional sixty days of loss of business income coverage under certain circumstances:

> If loss of business income coverage is provided, we will pay the actual loss of business income you sustain due to a reduction in sales, earnings or rental income that directly results from direct physical loss or damage to your covered property by a peril insured against, for the additional time required, when you use reasonable speed, to restore your business to the condition it would have been in if no loss had occurred.

*Id.* at 26.

The Policy also covers loss of business income due to the action of civil authority, which covers:

> The actual loss of business income you incur if you are denied access to a covered location by order of civil or military authority if:
>
> a. the order results from a covered loss; or
>
> b. the order results from damage by a peril insured against to the type of property covered by this policy within one (1) statute mile of a covered location.

*Id*. at 19.

Plaintiffs' Policy also covers "[t]he actual loss of business income you incur if your ingress to or egress from a covered location is prevented as the direct result of a peril insured against to the type of property covered by this policy within one (1) statute mile of a covered location." *Id.* The business income and extra expense provisions of the Policy exclude coverage for "[a]ny consequential, indirect or remote loss." *Id.* at 20, 21.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.

5 – OPINION & ORDER

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id*. at 679.

## DISCUSSION

Defendant moves to dismiss Plaintiffs' Complaint because no "direct physical loss or damage to covered property" occurred that would trigger coverage under any provisions of the Policy and that a virus exclusion bars Plaintiffs' claims. Plaintiffs argue that the Policy's undefined terms "loss of," "damage to" and "direct physical loss" cover Plaintiffs' losses and that the virus exclusion does not bar their claims.

**I.   Coverage Provisions**

Defendant argues that Plaintiffs' pandemic-related business losses are not covered under the terms of the Policy because no risk of direct physical loss or damage to Plaintiffs' business

property occurred. Determining whether insurance coverage exists is a two-step process. First, the insured bears the burden to establish that the loss falls within the policy's grant of coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas. Co.*, 222 Or. App. 453, 465 (2008). If the insured meets that burden, then the insurer bears the burden of establishing that an exclusion applies. *Id.*

Oregon rules of policy interpretation provide that "[i]f an insurance policy defines the phrase in question, [then the court] applies that definition." *Holloway*, 341 Or. at 650. If the insurance policy does not define the phrase, the court first considers whether it has a plain meaning. *Id.* If so, the court applies that meaning and conducts no further analysis. *Id.* If the phrase "has more than one plausible interpretation," then the court examines "the phrase in light of the particular context in which that [phrase] is used in the policy and the broader context of the policy as a whole." *Id.* (quotation marks and citation omitted). If a term of the policy remains ambiguous after engaging in those exercises, then "'any reasonable doubt as to the intended meaning of such [a] term[] will be resolved against the insurance company[.]'" *Id.* (quoting *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001)). A term is ambiguous only if it is susceptible to more than one plausible interpretation. *Id.*

Defendant argues that the relevant policy language is unambiguous, and Plaintiffs argue that the language is broad enough to cover their losses or, alternatively, that it is ambiguous and should be construed against Defendant. Def. Mot. 12; Pl. Opp'n 8–9. The Court agrees with the courts that have construed the phrase "direct physical loss or damage" to covered property and similar policy language and finds that the relevant policy language is unambiguous. *See, e.g.*, *Protégé Rest. Partners, LLC v. Sentinel Ins. Co., Ltd.*, ____ F. Supp. 3d ____, 2021 WL 428653, at *4 (N.D. Cal. Feb. 8, 2021) (finding the phrase "direct physical loss of or physical damage to" unambiguous); *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL

619100, at *5 (D. Or. Aug. 4, 1999) (same). Thus, the Court will construe the terms of the Policy by applying the definitions of the defined terms and the plain meaning of the undefined terms. *Holloway*, 341 Or. at 650. The parties also appear to agree that it is appropriate for the Court to decide this motion based on the Court's review of the Policy because it is incorporated by reference into Plaintiffs' Complaint. Def. Mot. 10; Pl. Opp'n 5–6.

    A.    Plain Meaning of Policy's Terms

Each of the coverage provisions apply only if a risk of "direct physical loss or damage to covered property" occurred. Policy 13. The court determines whether words have a plain meaning by "reference to the usual source of ordinary meaning, the dictionary." *Phillips v. State Farm Fire & Cas. Co.*, 302 Or. App. 500, 506 (2020) (noting that "directly" means "without any intervening space or time : next in order[;] . . . "in a straight line: without deviation of course." (quoting Webster's Third New Int'l Dictionary 641 (unabridged ed. 2002)). "Direct" means "'characterized by or giving evidence of a close esp. logical, causal, or consequential relationship.'" *Summit Real Est. Mgmt., LLC v. Mid-Century Ins. Co.*, 298 Or. App. 164, 177 (2019) (holding that "direct loss" means "loss resulting immediately and proximately from an event") (quoting Webster's Third New Int'l Dictionary 640).

"Physical" means "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary: material, natural[.]" Webster's Third New Int'l Dictionary 1706; *see also* 10A Couch on Insurance § 148.46 (3d ed. 2019) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property"). The dictionary defines "loss" as "the act or

fact of losing : failure to keep possession : deprivation;" or "an instance of losing[.]" Webster's Third New Int'l Dictionary 1338. The word "damage" means "loss due to injury : injury or harm to person, property, or reputation[.]" Webster's Third New Int'l Dictionary 571. Applying those definitions, the plain meaning of the phrase "direct physical loss or damage to covered property" is direct (without any intervening space or time) physical (of or relating to natural or material things) loss of (the act or fact of losing) or damage (injury or harm) to covered property.

      i.      Meaning of "direct physical loss or damage to covered property"

The plain meaning of the phrase "direct physical loss or damage" requires Plaintiffs' property to be lost or physically damaged for coverage to exist under any provisions of Plaintiffs' Policy. *See Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at *5 (D. Or. June 7, 2016) ("physical loss or damage" means "any injury or harm to a natural or material thing"), *vacated by stipulation of the parties*, 2017 WL 1034203 (Mar. 6, 2017); *Columbiaknit, Inc.*, 1999 WL 619100, at *5 ("'The inclusion of the terms "direct" and "physical" could only have been intended to exclude indirect, nonphysical losses.'" (quoting *Great N. Ins. Co. v. Benjamin Franklin Fed. Sav. and Loan Ass'n*, 793 F. Supp. 259, 263 (D. Or. 1990))). *Cf. Wy. Sawmills, Inc. v. Transp. Ins. Co.*, 282 Or. 401, 406 (1978) (Including the word "'physical' in the phrase 'physical injury to . . . tangible property' . . . negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage.'").

The Civil Authority provision extends coverage for loss of business income when an action of civil or military authority prohibits access to the property if the action of civil or military authority "results from" a covered loss or "damage by a peril insured against to the type of property covered by this policy within one (1) statute mile of a covered location." Policy 19.

9 – OPINION & ORDER

Thus, the Civil Authority provision requires that an action of civil authority prohibited access to Plaintiffs' property as a result of the loss, destruction, dispossession of or injury to property located within one mile of Plaintiffs' covered locations.

## II.     Application

Having determined the plain meaning of the undefined terms of the Policy, the Court now applies the plain meaning of those terms to the language of the Policy to determine whether coverage exists. Defendant argues that the phrase "direct physical loss or damage to covered property" requires Plaintiffs to lose property or demonstrate a physical alteration in the condition of their property for coverage to apply. The Court agrees.

Oregon courts have construed the phrase "direct physical loss or damage to property" and similar phrases to require some degradation in the condition of the property to invoke coverage under the "damage to property" portion of that phrase. In *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, this Court emphasized that a policy that covers "direct physical loss or damage"—and the inclusion of the word "physical" in particular—covers only direct damage and does not extend to consequential damages. 1999 WL 619100, at *4–5. Applying that construction, the Court held that the insurance policy of the plaintiff, a clothing manufacturer whose property had suffered water intrusion damage resulting in water damage to some of its merchandise, could recover only for the damage to the clothing directly damaged by the water intrusion. *Id.* at *7. The court ruled that only articles of clothing that were "physically changed in some manner," either by the water intrusion or the resulting mold and mildew spores, were covered under the terms of the policy. *Id.* at *7–8.

The Oregon Supreme Court held in the context of a liability insurance policy that including the word "physical" in the policy excluded coverage for consequential or intangible damages. *Wyoming Sawmills*, 282 Or. at 406. In that case, the plaintiff sought indemnification

10 – OPINION & ORDER

for damages it caused by selling defective lumber to a customer. *Id.* at 403. The purchaser used the defective lumber as studs in a building, and the studs later warped and twisted. *Id.* The court held that the policy, which defined "property damage" as "physical injury to or destruction of tangible property," did not cover consequential damages such as diminished value but did cover the cost of labor for "tearing out and putting back other parts of the building . . . in order to replace the studs[.]" *Id.* at 404, 408.

The Ninth Circuit also has held that the phrase "direct physical loss" requires the loss of a tangible item of property. *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004) (mem.) (holding that a business property insurance policy did not cover losses stemming from the removal of a film producer's name from the film credits because film credits are not tangible property); *Commonwealth Enters. v. Liberty Mut. Ins. Co.*, 101 F.3d 705, at *2 (9th Cir. 1996) (table) (holding that tenants' fear of asbestos contamination that led tenants to vacate commercial buildings was not physical loss or damage covered under business interruption provision).

In *Great Northern Insurance Company v. Benjamin Franklin Federal Savings and Loan Association*, a tenant of a commercial building owned by the insured discovered asbestos while remodeling their unit and demanded that the insured remove the asbestos. 793 F. Supp. at 261, *aff'd*, 953 F.2d 1387 (9th Cir. 1992). When the landlord refused to abate the asbestos and the tenant then vacated the unit, the insured submitted a business interruption claim under its property insurance policy, which covered "direct physical loss or damage." *Id.* The court ruled that coverage did not exist based on the presence of asbestos in the building because "[t]here is no evidence here of *physical* loss, direct or otherwise." *Id.* at 263. Affirming the district court, the Ninth Circuit held:

11 – OPINION & ORDER

> We agree with the district court, applying Oregon case law, that [the insured's] loss did not result "from direct physical loss." While [the insured] no doubt sustained consequential loss caused by the necessity of cleaning up asbestos, we conclude that it did not sustain "direct physical loss."

953 F.2d 1387, at *1 (9th Cir. 1992) (mem.).

Plaintiffs' Complaint alleges only that the state and local government orders issued in Oregon in response to the pandemic caused them to suspend their business operations. Although they allege that they expended money to meet new public health requirements, Plaintiffs do not allege that any of their property was lost or damaged as a result of the orders. Plaintiffs' Complaint alleges that (1) "Plaintiffs were forced to suspend, in whole or in part, their business operations due to certain orders and directives issued by Oregon Governor Kate Brown and local civil authorities[;]" and (2) As a direct result of the Orders, Plaintiffs were unable to operate their businesses, in whole or in part, while the Orders remained in effect[;]" (3) "When Plaintiffs and other similarly situated businesses were permitted to re-open, they could do so only with significant alterations to their premises and business models at great cost, including, among other things, loss of use of space, installation of barriers, increased cleaning and sanitation protocols, changing business hours and employee hours, decreased customer traffic, and generally more expensive operations in order to comply with the Orders[;]" (4) "Plaintiffs' business property cannot be used for its intended purposes and their business activities have necessarily been suspended or interrupted[;]" (5) Plaintiffs sustained direct physical loss or damage caused by the Orders[;]" and (6) "The direct, predominant, and efficient cause of Plaintiffs' direct physical loss or damage is the Orders." Compl. ¶¶ 11–15.

Absent from those allegations are any facts from which a factfinder could conclude that Plaintiffs' business property was lost or damaged. Plaintiffs' conclusory allegations that they suffered direct physical loss or damage are insufficient to state a claim. *See Cousins v. Lockyer*,

568 F.3d 1063, 1067 (9th Cir. 2009) ("conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal"). The absence of facts demonstrating any physical loss or damage to Plaintiffs' business property is fatal to Plaintiffs' claim.

Numerous courts in this circuit and around the country have reached the same conclusion that this Court reaches today. *See, e.g.*, *Protégé Rest. Partners, LLC*, 2021 WL 428653, at *4 (finding "direct physical loss of or physical damage to" unambiguous, that it requires a "distinct, demonstrable, physical alteration of the property" to invoke coverage, and noting that every California court to address COVID-19 business interruption claims to date has concluded that "government orders that prevent full use of a commercial property or that make the business less profitable do not themselves cause or constitute 'direct physical loss of or physical damage to' the insured property."); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) (finding that even assuming presence of virus at the plaintiffs' business premises, business income losses were directly caused by precautionary measures taken by the state to prevent the spread of COVID-19 rather than by direct physical loss of or damage to property); *Uncork & Create LLC*, 498 F. Supp. 3d 878, 883 (S.D. W. Va. 2020) (no coverage because "COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant."); *Johnson v. Hartford Fin. Servs. Grp.*, 510 F. Supp. 3d 1326, 1337 (N.D. Ga. 2021) ("COVID-19 hurts people, not property"); *Circus Circus LV, LP v. AIG Spec. Ins. Co.*, No. 2:20-cv-01240-JAD-NJK, 2021 WL 769660, at *3 (D. Nev. Feb. 26, 2021) (ruling that "pure, economic losses caused by COVID-19 closures do not trigger policy coverage predicated on "direct physical loss or damage"); *Levy Ad Grp., Inc. v. Chubb Corp.*, No. 2:20-cv-00763-JAD-DJA, 2021 WL 777210, at *3 (D. Nev. Feb. 16, 2021) (same); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-00597-BJR, 2021 WL

2184878, at *10–11 (W.D. Wash. May 28, 2021) (granting insurer's dispositive motions in consolidated actions against ten groups of insurers brought by hundreds of Washington businesses and finding that COVID-19 does not cause "direct physical damage to" or "direct physical loss of" property).[2]

Plaintiffs attempt to equate the temporary limitation or loss of use of the property to direct physical loss. The two are not equivalent. Construing Plaintiffs' allegations in the light most favorable to Plaintiffs, the losses Plaintiffs allege are purely economic and not the result of any "direct physical loss or damage to property." As a result, Plaintiffs have not met their burden to demonstrate that coverage exists under the Policy.

### III. Virus Exclusion

Defendant argues that the virus exclusion in the Policy bars Plaintiffs' claims. Plaintiffs argue that because they alleged that the orders, not the virus or pandemic, were the "direct, predominant, and efficient cause of Plaintiffs' direct physical loss or damage," Compl. ¶¶ 10, 11, 15, they can avoid application of the virus exclusion. Pl. Opp'n 24–28. Because Plaintiffs have not demonstrated that coverage exists, the Court need not determine whether any exclusion applies. *See ZRZ Realty Co.*, 222 Or. App. at 465.

### IV. Leave to Amend

Because the Court finds that Plaintiffs' Complaint cannot be amended to plausibly allege a claim under the terms of the Policy, the Court denies leave to amend. *Wheeler v. City of Santa*

---

[2] *See also Newman Myers Kreines Gross Harries, P.C. v. Gr. N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (finding that the phrase "direct physical loss or damage . . . unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage."); *Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co.*, 939 F. Supp. 2d 1059, 1069 (D. Haw. 2013) (that "direct physical loss or damage" means "that an event had a direct impact and proximately caused a loss related to the physical matter of the Property.").

*Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if amendment would be futile[.]").

## CONCLUSION

The Court GRANTS Defendant's Motion to Dismiss [14]. Plaintiffs' Complaint is dismissed with prejudice. Defendant's Request for Judicial Notice [16] is denied as moot.

IT IS SO ORDERED.

DATED: September 7, 2021.

_____
MARCO A. HERNÁNDEZ
United States District Judge